UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CITIZENS BANKING CORP.,

   Plaintiff,          Case No. 07-10985

v                HONORABLE ARTHUR J. TARNOW
                UNITED STATES DISTRICT JUDGE
CITIZENS FIRST BANCORP, INC., *et al.*,
                DONALD A. SCHEER
   Defendants.         MAGISTRATE JUDGE

_____/

## **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DE 2] AND DENYING DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS [DE 34]**

   Before the Court are two motions, Plaintiff''s motion for preliminary injunction [DE 2] and Defendants' motion for stay of proceedings [DE 34]. The Court held a motion hearing on Plaintiff's motion on July 24, 2007, as well as an evidentiary hearing on October 11, 2007. For the reasons which follow, Plaintiff's motion is GRANTED, and Defendants' motion DENIED.

## **I. BACKGROUND**

   Plaintiff has used the "CITIZENS" mark in Michigan since it was established in Flint in 1871. Similarly, Defendant has used the mark since it began in the Port Huron, Michigan area in 1938. Both parties have expanded their business territories: Plaintiff operates in approximately 29 counties in Michigan, and Defendant in at least six. Four other banks, not party to this action, operate in various parts of Michigan under marks that include the word "CITIZENS."

   The precipitating event for this action was Defendant's 2004 purchase of Metrobank's locations in Oakland County, where Plaintiff previously had no "CITIZENS"-named competitors. In late 2006, Defendant began re-branding the five Metrobank branches with the "Citizens First" name.

   Plaintiff's filed this action and motion for a preliminary injunction in March 2007. The motion seeks to enjoin Defendants from "using in Oakland County any and all marks formed by or incorporating the word CITIZENS . . ."

Shortly before the July 2007 motion hearing, Plaintiff filed exhibits which included several actual confusion reports. It also filed an expert's report of two Internet surveys conducted to demonstrate the likelihood of confusion between the marks. Asked to compare the parties' names, first in block letters, then accompanied by their logos, over 40% of survey respondents found the parties' marks appeared to be from the same or affiliated entities, as compared to a control trademark.

Defendants responded to the surveys with a report by their own expert, highly critical of Plaintiff's surveys. Plaintiff conducted a third survey in August 2007, modified in response to Defendants' criticisms, although not all suggested changes were incorporated. This version included a "don't know" answer option, a correction to Defendant's logo, and modification of the "control" trademark used for comparison. In the third survey, 37% of respondents perceived sameness or affiliation.

Both experts testified at the October evidentiary hearing. In preparation for that hearing, Plaintiff also submitted more reports of actual confusion. One of those was an inquiry by the State of Michigan, seeking to resolve a consumer complaint about Defendant, that was sent to Plaintiff.

## II. DISCUSSION

### A. Motion for preliminary injunction

First, to evaluate a motion for a preliminary injunction, the Court must balance the following factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

Second, the test to determine whether trademarks have been infringed, and therefore the test for success on the merits, is the likelihood of confusion. "In federal trademark infringement claims under 15 U.S.C. § 1114, the 'touchstone of liability . . . is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.* 146

F.3d 350, 355 (6th Cir. 1998) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

In this Circuit, the eight-part *Frisch*-factor test is used to evaluate the likelihood of confusion. Those factors are

> (1) strength of the plaintiff's mark, (2) relatedness of the goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the defendant's intent in selecting its mark, and (8) likelihood of expansion of the product lines.

*General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citations omitted).

These factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Group Inc. v. Homeowners Marketing Specialists*, 931 F.2d 1100, 1107 (6th Cir. 1991). *Homeowners* characterizes the ultimate question as whether "relevant consumers" perceive that the parties' products or services are affiliated. *Id.*

### 1. Likelihood of confusion

Of the eight *Frisch* factors, a few are not disputed. For instance, both parties acknowledge that their services are essentially identical, as are their marketing channels. While the marketing channels factor is most dispositive when other factors are less probative, it is meant to evaluate "how and to whom the respective goods or services of the parties are sold." *Homeowners Group*, 931 F.2d at 1110. Products marketed via different channels to different groups of consumers have a lower likelihood of confusion or mistake. *Id.* Obversely, the use of similar channels is evidence that the same consumers are being targeted by both parties, resulting in a higher likelihood of confusion.

Where services are, as here, in direct competition, "confusion is likely if the marks are sufficiently similar." *Id.* at 1108. As the marks are similar (*see* II.1.b, *infra*), the factors of identical services and marketing channels weigh in Plaintiff's favor.

Other factors are disputed or otherwise do not weigh heavily in either parties' favor. Those include degree of purchaser care, Defendants' likelihood of expansion, and Defendants' intent in selecting the mark. On the last factor, *see Wynn Oil Co. v. Thomas (I)*, 839 F.2d 1183, 1189 (6th Cir. 1988) ("While in this Circuit we do consider intention to be relevant when a plaintiff shows that a defendant knowingly copied the contested trademark, . . . absent such a showing, intentions are irrelevant.").

Three factors require more analysis. Those are the strength of Plaintiff's mark, the similarity of the marks, and evidence of actual confusion.

### a. The strength of Plaintiff's mark

A mark is strong if it is highly distinctive, that is, "if the public readily accepts it as the hallmark of a particular source." *Homeowners Group*, 931 F.2d at 1107. Courts have come to very different conclusions about the strength of the term "CITIZENS." The Fifth Circuit characterized it as "very weak, and deserv[ing] little protection." *Citizens Nat. Bank of Meridian v. Citizens Bank of Philadelphia Mississippi*, 35 Fed.Appx. 391, 2002 WL 761301, *2 (5th Cir. 2002). It did so because

> [t]here are 168 registered businesses using 'Citizens' in their names in the state, including seven banking institution. . . . Extensive use of a word, particularly in a similar industry, reduces the likelihood of confusion among consumers and drastically weakens a mark.

*Id.* The Tenth Circuit similarly recognized "the well-established principle that extensive third-party use of the disputed term indicates that the term itself deserves only weak protection." *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 654 (10th Cir. 1996).

The Third Circuit, however, upheld a jury verdict that found a CITIZENS mark to be distinctive. *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 123 (3rd Cir. 2004). The court acknowledged that widespread use of even a distinctive mark may weaken it, but deferred to the jury finding of infringement. *Id.*

In addition, a decision in this District determined that "Citizens Bank" was a strong mark. *Citizens Banking Corp. v. CNB Bancshares, Inc.*, 98-74195 (Dec. 23, 1998). The court's reasoning was that Plaintiff was the "only Michigan bank using the CITIZENS mark," and that it had spent $22 million in advertising since 1990 to promote its services. *Id.* at 8.

Perhaps a development since *Citizens Banking Corp. v. CNB Bancshares* was decided, at least four other banks, in addition to the parties here, use some form of the CITIZENS mark in Michigan. This fact undermines the case's determination that the CITIZENS mark is strong.

On the basis of the case law and the facts, this Court cannot agree with Plaintiff that the CITIZENS mark is strong. This factor thus favors the Defendants.

### b. The similarity of the marks

The parties agree that similarity of marks is accorded "considerable weight" in a *Frisch*-factor analysis. *Daddy's Junky Music*, 109 F.3d at 283. *Daddy's* states that the test is not a side-by-side look in the courtroom, but that "courts must view marks in their entirety and focus on their overall impressions, not individual features." *Id.* (citation omitted). Further, courts must determine whether the marks are potentially confusing when viewed individually or "singly" by consumers, that is, without an opportunity to compare to the competing mark. *Id.*

Plaintiff argues that as the dominant term, "CITIZENS" will be focused on by consumers, regardless of any second term. Indeed, "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997).

For example, the marks "Midwest Guaranty Bank" and "Guaranty Bank" were found to be similar, because of the dominant term "Guaranty." *Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 912 (E.D.Mich. 2003). This was so despite a significant stylistic difference in logos, one of which was bordered by bold lines and contained an eagle, *id.* at 915; and in media, one party using banners and the other granite, *id.* at 916. Observing that the Sixth Circuit said the appropriate assessment to judge confusion was "from the perspective of those who may have a general, vague, or even hazy impression or recollection of the other party's mark," the court found in favor of the party claiming infringement. *Id.*

Despite the different secondary terms here – "Bank" and "First" – and despite the different visual elements of the logo, the marks as evaluated under the case law are similar. This heavily-weighted factor therefore favors the Plaintiffs.

### c. Evidence of actual confusion

Plaintiff's actual confusion reports and survey evidence together provide proof to support finding a likelihood of confusion. Proof of actual confusion is "often deemed the best evidence of possible future confusion," but is not considered essential. *Id.* (citing *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir.2006))."To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion, or consumer surveys." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (citations omitted). Surveys are most often used to prove consumer confusion, but are not considered essential at the preliminary injunction stage. *Scotts Co.*

*v. United Industries Corp.*, 315 F.3d 264, 276 (4th Cir. 2002) (citations omitted). The holder of a trademark need only demonstrate likelihood of confusion, not actual confusion. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112,120 -121 (1st Cir. 2006).

Defendants criticize both Plaintiff's actual confusion reports and its surveys. However, "[b]earing in mind that a successful Lanham Act plaintiff only must show a sufficient *potential* of confusion, not actual confusion, the fact that some confusion already has occurred favors plaintiff at least to some extent." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 635 (6th Cir. 2002) (quoting *Daddy's Junky Music Stores*, 109 F.3d at 284 (emphasis in original)).

Plaintiff has offered reports of various types of confusion between the parties' names. They included Defendants' customer seeking to pay her loan at Plaintiff's branch bank, a phone call to the wrong bank regarding routing numbers, and Plaintiff receiving a call seeking to cash a check drawn on an account with Defendants. Plaintiff also provided copies of correspondence with the Michigan Office of Financial and Insurance Services. That office wrote to Plaintiff to investigate a mortgage complaint, over a loan provided by Defendant.

Defendant disparages several of Plaintiff's confusion reports as irrelevant. However,"[t]here is no requirement that evidence of actual confusion, to be relevant, 'must be confusion at the point of sale– purchaser confusion–and not the confusion of nonpurchasing, casual observers.'" *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1119 (6th Cir. 1996) (quoting *Esercizio v. Roberts*, 944 F.2d 1235, 1243 (6th Cir. 1991).

On the issue of surveys, consumer surveys must meet *Daubert* criteria, but such "evidence should ordinarily be found sufficiently reliable under *Daubert*." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997). Here, the parties stipulated to the qualifications of their experts.

The experts themselves disagreed about the validity of the survey. For instance, Defendants' expert asserted that the surveys were invalid for failing to address the universe of the junior user's (Defendant's) potential customers, and not the senior user's.

It is true that "[i]dentification of the proper universe is recognized uniformly as a key element in the development of a survey." J. Thomas McCarthy, *6 McCarthy on Trademarks and Unfair Competition* § 32:159 (4th ed.1996) (citing The Federal Judicial Center's 1994 Reference Manual on Scientific Evidence). *McCarthy* further advises that "[i]n a traditional case claiming

6

'forward' confusion, not 'reverse' confusion,[1] the proper universe to survey is the potential buyers of the junior user's goods or services." *Id*. (citing *Hutchinson v. Essence Communications, Inc.*, 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991)). Defendants assert that the proper universe is therefore the six counties in which they, the junior user, operate.

However, Defendants are incorrect. While the appropriate universe is usually drawn from the junior user's customers, this is not an absolute rule. "Where the senior and junior user's products are of the same kind, the population of consumers is the same." *Hutchinson v. Essence Communications, Inc.*, 769 F.Supp. 541, 546 (S.D.N.Y. 1991). In addition, on the issue of the proper geographic area for a survey universe, *McCarthy* says that "in an infringement case, the usual target group to survey are those *living in the territory served by both parties.*" *McCarthy* § 32:161 (emphasis added). Accordingly, the survey universe of Oakland County was correct.

Defendants also argue that Plaintiff's surveys were invalid for being conducted on the Internet, for use of an existing (not fictitious) control, and for polling only owners of checking accounts. However, the appropriate resolution for a flawed survey is to address its weight and credibility, and not to exclude it. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F.Supp.2d 772, 786 (W.D.Mich. 2006). *Accord*, *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463–64 (Fed. Cir. 1991) ("Although we agree with [Plaintiff] that the survey was not perfect in its content and execution, it is admissible and given appropriate weight.").

*Homeowners* said the ultimate question is whether "relevant consumers" perceive that the parties' products or services are affiliated. *Homeowners Group*, 931 F.2d at 1107. Plaintiff's survey found over 40% of its potential customer base perceived the marks to indicate the same or affiliated entities. Percentages as low as 15% have been determined to establish confusion among an "appreciable number" of potential customers. *See*, *e.g.*, *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279, 192 U.S.P.Q. 555 (7th Cir. 1976) *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980). Plaintiff therefore answered that "ultimate question" affirmatively. Plaintiff's surveys, even if flawed, coupled with its reports of actual

---

[1] "'[F]orward confusion' occurs when customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services. . . . [R]everse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user:" *McCarthy* § 23:10

7

confusion, support a finding of likelihood of confusion. Accordingly, this factor clearly weighs heavily in Plaintiff's favor.

In sum, of the eight *Frisch* factors, two are disputed or favor neither party: likely degree of purchaser care and the likelihood of expansion. A third factor has been determined to be irrelevant to the analysis: Defendants' intent in selecting its mark.

Only one factor, the weakness of the mark, favors Defendant. The four remaining weigh in Plaintiff's favor. The evaluation of these factors "imply no mathematical precision," *Homeowners Group Inc.*, 931 F.2d at 1107, but it is clear from balancing the factors that Plaintiff has established likelihood of confusion.

## *2. Application of preliminary injunction criteria*

To demonstrate the likelihood of success on the merits, and obtain a preliminary injunction, Plaintiff must make a clear showing that a likelihood of confusion exists. As explained above, Plaintiff has made that showing.

Because it has established the likelihood of confusion, Plaintiff prevails on the other injunction factors, as well. Irreparable injury may be presumed when the likelihood of confusion is established. *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991).

Similarly, the public is served when an injunction prevents consumer confusion due to a party's infringement. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Finally, on the issue of substantial harm, re-branding four branches and an ATM is a minimal burden on the Defendant.

Accordingly, the Plaintiff has made its case for a preliminary injunction.

### B. Motion for stay of proceedings

Defendant seeks a stay of proceedings pending resolution of another case brought by Plaintiff in this Court, *Citizens Banking Corp. v. Citizens Financial Group, Inc., et al.*, No. 07-11514. Granted, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *Ohio Env'l Council v. U.S. Dist. Court, Southern Dist. of Ohio, Eastern Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

*Ohio Environmental Council* cautioned, however, that the movant for a stay "must make out

a clear case of hardship or inequity in being required to go forward." *Id*. (citing *Landis*, 299 U.S. at 255). It concluded that "the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id*.

As the Ninth Circuit observed in *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Id*. at 1112. Defendant has therefore failed to demonstrate that "pressing need," nor any hardship or inequity in proceeding.

Accordingly, Defendant's motion is DENIED.

## CONCLUSION

IT IS ORDERED that Plaintiff's motion for a preliminary injunction be GRANTED.

IT IS FURTHER ORDERED THAT Defendant's motion for a stay of proceedings be DENIED.

SO ORDERED.

S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: December 3, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 3, 2007, by electronic and/or ordinary mail.

S/THERESA E. TAYLOR
Case Manager